LINUS L. BAKER KS 18197
6732 WEST 185TH TERRACE
STILWELL, KANSAS 66085
913.486.3913
LINUSBAKER@PRODIGY.NET
*Attorney for Jeremy Evans*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JEREMY EVANS** | | |
| | PLAINTIFF | |
| v. | | |
| **HAAG INC.** | | |
| | DEFENDANT | Case No. 2:25-cv-02205 |
| *SERVE*: | | |
| *GARY J. HAAG* | | |
| 326 SE 15TH ST | | |
| TOPEKA, KS 66607 | | |

### COMPLAINT

The plaintiff Jeremy Evans for his Complaint states as follows:

### JURISDICTION AND VENUE

1.  The Court has personal and subject matter jurisdiction under Title VII of the Civil Rights Act of 1964.

2. Venue is proper in this judicial district as the defendants regularly conduct substantial business activity in the state of Kansas.

### PARTIES

### PLAINTIFF

3.  The plaintiff Jeremy Evans is an adult citizen of the United States and a resident of the state of Texas.

**1**

**DEFENDANT**

4. Haag Inc. has its principal place of business at 326 SE 15th St Topeka, KS 66607. Its Federal ID number is 48-0854018 and its Kansas ID number is 036480854018F-01.

**ADMINISTRATIVE PREREQUISITES**

5. Plaintiff Evans filed a Charge of Discrimination with the Equal Employment Commission against the defendants which was assigned the charge number 28D-2024-00822. Defendants received notice of this charge.

6. On April 14, 2025, the EEOC issued Plaintiff a right-to-sue notice authorizing him to commence a civil action within 90 days; a copy of the notice is attached hereto and is incorporated herein by reference.

7. This action was filed within 90 days of the EEOC's issuance of the plaintiff's right-to-sue notice, and within two years of the discrimination alleged herein.

## Count 1
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.
### DISPARATE TREATMENT / INTENTIONAL DISCRIMINATION

8. Jeremy A. Evans (Mr. Evans) was treated less favorably than others because of his religious beliefs.

9. Mr. Evans was hired and employed by Haag Inc. (Haag) as a clerk at the convenience store called Kicks 66 in Ottawa, Kansas, beginning December 15, 2023.

10. Haag used a software program called "Paycom" and required employes to utilize the software for payroll and other human resource events such as requesting time off or Haag communications. Employees such as Mr. Evans download the software to utilize this program.

11. Mr. Evans identification on Paycom was as follows:



12. Mr. Evans was a good and valued employee and had been given a 50 cent an hour raise two weeks prior to August 27, 2023.  He had a stellar employee record with Haag.

13. On or about August 27, 2023, Haag sent Mr. Evans through Paycom a depiction showing two tablets similar to what the Old Testament Moses received from God containing the Ten Commandments with yellow beams emanating from behind.

14. The nomenclature used was "Thou Shall" and "Thou Shall Not" which mimics the English usage contained in the King James Bible when referring to the Ten Commandments.

15. The two tablets contained verbatim the Ten Commandments written in Hebrew as depicted below:

3



16. Although it contained 15 "Thou shall" imperatives in its employee document, Haag called it "the basic 10 commandments of working as a cashier."  It warned that "Be careful, and do not deviate from these commandments."

17. It was titled "Convenience Store Commandments and looked like the following:

## Convenience Store Commandments



- …Thou shall not take checks under any circumstances.
- …Thou shall verify any purchase over $50.00 with a picture id and/or driver's license. This shall include purchases made by credit card.
- …Thou shall not release merchandise if a credit card sale is declined; they must make other arrangement
- …Thou shall not pay out any vendors, customers, scams calls, etc. unless the manager is present and give approval.
- …Thou shall not play lottery while on the clock and will make certain that I log my beginning and ending numbers for my shift.
- …Thou shall verify the start cash box and change box at the start and end of each shift.
- …Thou shall keep all security doors and windows shut while any customers are in the store after 8 PM un store opens for the day shift in the morning.
- …Thou shall keep front doors locked while doing cleaning duties on 3rd shift.
- …Thou shall keep cash dropped to under $200.00 worth of twenties at all times.
- …Thou shall not share registers; I will use my own code to log into my register for my shift.
- …Thou shall not take anything but cash for the lottery and Lotto (no credit cards).
- …Thou shall not pull or print any lottery ticket or lotto until cash is in my hand and purchase has run thro register.
- …Thou shall use counterfeit machines to check all $20.00, $50.00 and $100.00 dominations.
- …Thou shall not have family, friends or acquaintances hanging out in the store during my shift or have anyone behind the counter under **ANY** circumstances.
- …Thou shall card for cigarettes, tobacco, beer and vape knowing that if I sell to a minor, I will have court costs and a fine to pay similar to the store's fines.

These are the basic 10 commandments of working as a cashier. You will note these commandments are concerned primarily with 2 areas: Safely and Loss Preventions. You must follow these commandments or you put yourself and us in jeopardy. Be careful, and do not deviate from these commandments. If something seems fishy, it most likely is…

Date:08/27/2024

Employee Name: EVANS, JEREMY

Employee Signature: (Signature)  *

Manager Signature:

18. The document titled the Haag Convenience Store Commandments stated "You must follow these commandments or you put yourself and us in jeopardy.

19. The Store Commandments had already been dated "08/27/2024" and had the name "EVANS, JEREMY" printed next to the Employee name.

20. Haag had injected religion into its directives as though Haag was the Old Testament Moses or disobeying the Haag Commandments was akin to disobeying God's Commandments with similar consequences.

21. By doing so Haag ridiculed as cartoonish and debased the Hebrew faith, as well as Mr. Evan's Christianity which recognizes the Old Testament and the Ten Commandments as being Holy from God.

22. By having to sign and have this document placed in Mr. Evan's personnel file compelled Mr. Evans to convey speech and messaging that was contrary to his religious beliefs.

23. Mr. Evans provided enough information about his religious needs to permit Haag to understand the existence of a conflict between Mr. Evan's religious beliefs and practices and Haag's job requirements.

24. Mr. Evans sincerely objected being forced to read and then sign this blasphemous document, ratifying and agreeing to what he considered to be a debasing and mockery of religion and his sincere religious beliefs as a Christian.

25. Mr. Evans notified Haag of his religious beliefs and convictions about this document and requested an accommodation.

26. Mr. Evans made one of many requests that it be written in a way not to inject religion or use the Ten Commandments" in this fashion.

27. Mr. Evans stated that he was willing to read and agree to Haag's employee requirements if written in a different way than depicting this using the Ten Commandments.

28. Mr. Evans offered other possible suggestions that rather than depicting the Ten Commandments and using the "Thou shall" and "Thou Shall not" language in conjunction with the Ten Commandment graphic, that Haag could remove the graphic, or remove the reference to "10 commandments."

29. Mr. Evans spoke to his Manager about these things and these suggestions.

30. The Manager took the issue to Haag's District Manager and the Human Resources department.

31. The District Manager was Kathy and Mr. Evans texted her the below:



32. Kathy's same hour response was "this is not appropriate please stop":



33. It was told to Mr. Evans that an "emergency meeting" about Mr. Evan's discussion with the Manager took place at Haag's Topeka office.

34. During this time between Mr. Evans disclosure of his religious convictions, as well as making some suggestions as to how Haag could accommodate his religious beliefs, Haag locked Mr. Evans from working his shift as it prohibited him from logging into work through the software.

35. Mr. Evans was immediately punished by denying him being paid for working because of Mr. Evans religious beliefs and his disclosure of those convictions to Haag.

36. The Manager told Mr. Evans he was not eligible to work because he refused to sign the Convenience Store Commandments as written and depicted.

37. Mr. Evans waited at his assigned Kicks 66 store waiting on the Manager to return from this meeting in Topeka.

38. When the Manager returned she told Mr. Evans that HR and the owners of Kicks 66 would not change in any fashion the document because of Mr. Evans religion or to make any kind of religious accommodation to Mr. Evans.

39. There were numerous accommodations available to Haag in removing the religious depictions and overtones where Mr. Evans could still make the same commitments or understandings that Haag was requiring – and particularly if there was any undue hardship to avoid any claimed undue hardship. Haag had numerous ways to negotiate with Mr. Evans to accommodate his religious beliefs that would have not caused any undue hardship to Haag.

40. Haag failed to used good faith to explore various possible accommodations to Mr. Evan's requests.

41. Mr. Evans repeatedly asked the Manager if any changes could be made at all to which she said "absolutely not." The Manager told Mr. Evans that if the document was not immediately signed that Mr. Evans would be terminated.

42. Mr. Evans refused to sign the document, was terminated by the Manager, and he gave her his company keys and company apparel. He told the Manager I am not signing the Ten Commandment document.

43. Title VII of the federal Civil Rights Act of 1964 ("Title VII") prohibits an employer from discriminating against an employee because of his religion which Haag did.

44. One type of religious discrimination is an employer's failure to reasonably accommodate an employee's sincerely held religious beliefs which Haag did.

45. When an employment requirement conflicts with an employee's sincerely held religious belief, and the employer knows of the employee's belief, the law requires that the employer accommodate the employee's religious belief, unless the employer demonstrates that it is unable to reasonably accommodate the employee's religious belief without undue hardship to the employer's business. Haag failed to reasonably accommodate Mr. Evans beliefs and there was no undue hardship to Haag in accommodating Mr. Evans.

46. The law requires affirmative action by the employer to help resolve, if possible, the conflict between an employee's religious beliefs and the employer's rule or policy which Haag failed to engage in good faith.

47. Haag did not assess all possible accommodations or the reasonableness of all possible accommodations to Mr. Evans including the ones suggested by Mr. Evans.

48. Haag failed engage in an open and honest dialogue with Mr. Evans prior to terminating his employment.

49. Another type of religious discrimination is an employer's retaliation after the employee makes an accommodation request. This happens when the employee participates in the accommodation-request, one or more adverse actions by the employer followed as a result of an accommodation request. Haag engaged in several adverse actions as previously described herein after Mr. Evans shared his religious convictions.

50. Haag refused to give religion favored treatment as Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not to fail or refuse to hire or discharge any individual because of such individual's religious observance and practice. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

51. Haag discriminated and retaliated against Mr. Evans by failing to reasonably accommodate his sincerely held religious beliefs. To establish his claim, the plaintiff must first prove by a preponderance of the evidence three elements (this is referred to as the plaintiff's prima facie case): (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he informed the defendant about the conflicts; and (3) he suffered an adverse employment consequence for failing to comply with the conflicting employment requirement.

52. An adverse employment event is defined as some harm respecting his employment terms or conditions. The harm does not need to be significant or substantial.

53. Haag failed to reasonably accommodate Mr. Evans religious beliefs and there was no undue hardship to Haag in view of its overall conduct of its business.

54. Haag would not have incurred substantial increased costs in relation to the conduct of the defendant's particular business by accommodating Mr. Evan's religious beliefs.

55. Haag's denial of a requested religious accommodation constituted an adverse action against Mr. Evans as there was no undue hardship to Haag in accommodating Mr. Evans.

## Count 2
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E, ET SEQ.
### DISPARATE IMPACT

56. The plaintiff incorporates the above allegations as fully set forth

57. According to Haag, Mr. Evans was the only employee among hundreds if not thousands of Haag employees over a period of fifty years to refuse to sign the Haag Ten Commandments document.

58. Haag limited, segregated, and classified Mr. Evans as described above which deprived or tended to deprive Mr. Evans of employment opportunities.

59. Haag adversely affected Mr. Evans status as an employee, because of his religion as described above.

60. Mr. Evan's sincere religious beliefs precluded him from complying with Haag's Ten Commandments Policy for which he requested accommodation but was denied.

61. Haag's requirement that Mr. Evans agree and sign the Ten Commandments document had an adverse effect on him because he was terminated because he did not comply with that policy.

62. Wherefore, as to both Counts, the plaintiff requests that the Court grant him the relief requested including the following: compensation for:

  a. Termination or employee misconduct contained in his personnel file;
  b. Deterioration in job skills;

10

c. Lost bonus pay;
d. Lost seniority;
e. Loss of preferential shifts and other adverse impacts on working conditions;
f. Loss of wages; and
g. Extreme stress and anxiety.
 The plaintiff has suffered the losses and damages described in this Complaint.

 **WHEREFORE**, the plaintiff Jeremy Evans requests damages, including lost benefits and wages due to his termination, unpaid lost wages due to wrongful discharge or constructive discharge, back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages, including, but not limited to, damages for pain and suffering, mental and emotional distress, suffering and anxiety, reductions in wages, expenses costs and other damages due to the defendant's wrongful conduct; award the plaintiff reasonable attorneys' fees and costs; and grant any other relief that the Court deems just, proper, and equitable.

**JURY TRIAL DEMAND**

**PLAINTIFF HEREBY REQUESTS A JURY TRIAL**

        By:/s/Linus L. Baker
        Linus L. Baker KS 18197
        6732 West 185th Terrace
        Stilwell, Kansas 66085-8922
        913.486.3913
        913.232.8734 (fax)
        E-Mail: linusbaker@prodigy.net
        Attorney for the plaintiff Jeremy Evans